**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **MICHAEL ANTHONY OLAGUE, AS** | § | |
| **DEPENDENT ADMINISTRATOR** | § | |
| **OF THE ESTATE OF ARTURO** | § | |
| **MARTINEZ OLAGUE, Deceased** | § | |
| *Plaintiff* | § | **CIVIL ACTION NO. _____** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **CORECIVIC, INC.** | § | |
| *Defendant* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Michael Anthony Olague, duly appointed, qualified and acting as the Dependent Administrator of the Estate of Arturo Martinez Olague, deceased, complaining of Defendant CoreCivic, Inc., and in support thereof would show the Court as follows:

### I.   INTRODUCTION

1.1    Arturo Martinez Olague ("Decedent") was a detainee at the Eden Detention Center, a private prison located in Eden, Texas.  Defendant CoreCivic, Inc. ("CoreCivic") owns and operates Eden Detention Center as a medium-security facility holding male detainees arrested by the federal Immigration and Customs Enforcement agency, pursuant to CoreCivic's contract with the Federal Bureau Of Prisons.

1.2    In January of 2021, Decedent received severe injuries while in the custody of CoreCivic, incurred in an unrestrained fall off of his bunk.  Despite its clearcut duty to protect detainees such as Decedent from the "unreasonable risk of physical harm", CoreCive failed to take any effective steps to protect against such injuries, despite Decedent's known history of

hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk, including a highly similar injury just four days before. Likewise, despite its duty to appropriately diagnose and/or treat injured detainees such as Decedent, CoreCivic's subsequent actions resulted in a nearly 8 hour delay between the infliction of his injuries, and his arrival at a medical facility able to appropriately care for hemophiliacs such as Decedent.

1.3    Just six days after his fall, Decedent died of the severe injuries incurred by him while in CoreCivic's custody at the Eden Detention Center. Plaintiff, as the Dependent Executor of Decedent's estate, now brings the present wrongful death and survival claims against CoreCivic.

## II.    JURISDICTION AND VENUE

2.1    Jurisdiction is proper under 28 USC §1332(a)(1) as Plaintiff is a Texas resident, while Defendant CoreCivic is a Maryland corporation, and the matter in controversy exceeds $75,000.

2.2    Venue is proper in this District under 28 USC §1391(b), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## III.    PARTIES

3.1    On or about December 20, 2022, Plaintiff was issued Letters Of Dependent Administration for the Estate of Arturo Martinez Olague, Deceased, by the Probate Court of Texas, County of Hidalgo. Plaintiff is therefore the personal representative of Decedent's Estate, and as such is entitled to bring suit for damages owed Decedent pursuant to VTCA Estates Code §351.04(a)(1).

3.2    The statutory beneficiaries of Decedent are entitled to bring an action on account of the wrongful death of Decedent, but they have not commenced any such action within three

2

months of the Decedent's death, nor have they requested that the Plaintiff not commence such action. Therefore, Plaintiff brings this action pursuant to Section 71.004 of Civil Practice & Remedies Code of Texas, on behalf of the following statutory beneficiaries:

> In his individual capacity, Michael Anthony Olague is a United States citizen and a resident of McAllen, Texas. He is a biological child of Decedent.

> Jacqueline Olague is a United States citizen and a resident of McAllen, Texas. She is a biological child of Decedent.

> Stephanie Torres is a United States citizen and a resident of McAllen, Texas. She is a biological child of Decedent.

> Arthur Olague is a United States citizen and a resident of McAllen, Texas. He is a biological child of Decedent.

All four of Decedent's children listed above will be collectively referred to herein as the "Statutory Beneficiaries". See attached Exhibit A - Letter of Dependent Administrator naming Michael Anthony Olague as Dependent Administrator of the Estate of Arturo Martinez Olague.

**Defendant**

3.3    Defendant CoreCivic, Inc., formerly the Corrections Corporation of America, is a for-profit corporation providing correctional and detention services. CoreCivic is a Maryland corporation operating under federal tax laws as a real estate investment trust. CoreCivic does business in this District, including its operation of the Eden Detention Center, located in Eden, Texas. According to the Texas Secretary of State, CoreCivic's registered agent is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Regardless of its place of incorporation, the allegations against CoreCivic arise from its actions and omissions occurring within both the State of Texas and this District.

## IV.    FACTUAL ALLEGATIONS

4.1    CoreCivic owns and operates the Eden Detention Center, a private prison located in Eden, Texas. Pursuant to its contract with the Federal Bureau Of Prisons, CoreCivic operates

Eden Detention Center as a medium-security facility holding male detainees arrested by the federal Immigration and Customs Enforcement agency.

4.2     Decedent Arturo Martinez Olague was first arrested on November 7, 2019, and was initially detained in various other detention and/or processing centers located in Texas.   In November of 2020, the United States District Court for the Southern District of Texas sentenced Decedent Arturo Martinez Olague to 18 months imprisonment for "being found in the U.S. after previous deportation", pursuant to 8 USC §1326.  The sentencing court transferred Decedent to the custody of the Federal Bureau Of Prisons, who initially detained Decedent at various other detention and/or processing centers located in Texas.  On or about December 2, 2020 Decedent was transferred to the Eden Detention Center, pursuant to the Federal Bureau Of Prisons' existing arrangement with CoreCivic.

4.3     As part of its intake process, CoreCivic received Decedent's recent medical records from the aforementioned prior detention and processing centers, which records repeatedly indicated that Decedent suffered from hemophilia, a genetic disorder which prevents blood from clotting normally, and which can significantly heighten the health risks arising from otherwise minor injuries, such as a fall off of a low bunk.  Such prior medical records likewise indicated that Decedent was prone to seizures, had last been hospitalized for such seizures in July 2020, and had also broken 3 ribs in a seizure-related fall.  Unsurprisingly, Decedent's prior medical records likewise recommended that Decedent be assigned to a bottom bunk only, to reduce the medical risks of injuring himself while falling out of bed.

4.4     At the time of his intake at the Eden Detention Center in December 2020, CoreCivic's personnel performed a health evaluation where Decedent's hemophilia and history of

seizures were acknowledged. In handwritten remarks on Decedent's intake forms, CoreCivic's personnel explicitly recommended "low bunk, low tier".

4.5    Prior to any further falls occurring in the Eden Detention Center itself, Decedent repeatedly reported to CoreCivic personnel – in January of 2021 – that he was feeling dizzy, and had a recent history of falls. Contemporaneous records kept by CoreCivic personnel likewise repeatedly record that Decedent was "unsteady" and "off balance".

4.6    On January 24, 2021, CoreCivic personnel observed Decedent lying on the floor after a fall, and attempting to climb back into his bunk. In so doing, Decedent struck his head on the bunk, and suffered a severe head injury which resulted in a concussion ("First Head Injury"). Decedent was transferred to Shannon Medical Center for emergency care.

4.7    In the wake of Decedent's First Head Injury, CoreCivic supposedly implemented a program to monitor Decedent. However, despite Decedent's known history of hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk, no proactive steps (such as rails, padding, or allowing Decedent to sleep on the floor) were taken to reduce the risk of Decedent falling from his bunk a second time.

4.8    In a written Sick Call Request dated January 26, 2021, Decedent notified CoreCivic that "*I have fallen twice inside this cell. Both officers have IGNORE me. I want to see Unit Dr. I need medical help.*" Despite Decedent's explicit request to be seen by a physician, CoreCivic merely had a nurse assess his condition, on January 27, 2021.

4.9    On January 28, 2021, Decedent suffered a second head injury when he fell approximately 18 inches from his bunk on to the concrete floor of his cell ("Second Head Injury"). Decedent was initially conscious for a considerable amount of time after receiving his Second

Head Injury, during which time Decedent complained of a headache, and attempted to get up from his bunk.   Although CoreCivic personnel discovered Decedent's injuries at approximately 12:37 a.m., CoreCivic failed to ensure that Decedent was delivered to an appropriate healthcare facility (i.e. St. David's South Austin Medical Center) until almost 8 hours later, at 8:22 a.m.   Such extensive 8 hour delay-in-treatment arose from the fact that, despite Decedent's known hemophilia, CoreCivic's actions and/or inactions resulted in Decedent being routed to at least two intervening hospitals which were unable to provide appropriate care to such a hemophilic patient.

4.10    Decedent died on February 2, 2021.  The Travis County Medical Examiner listed "blunt head trauma" as the sole cause of Decedent's death.

## V. CAUSES OF ACTION

5.1    In *Minneci v. Pollard*, 565 US 118, 126-130 (2012), the Supreme Court recognized that federal detainees being held in private prisons possessed the right to sue such prisons and their staff under state law, citing *Salazar v. Collins*, 255 SW3d 191, 198-200 (Tex. App. – Waco 2008, no pet.).  The *Minneci* court, *ibid*, further held that such actionable torts included failure to protect detainees from the "unreasonable risk of physical harm", and "negligent failure to diagnose or treat".

## VI. <u>WRONGFUL DEATH</u>

6.1    Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.

6.2    CoreCivic owed Decedent, as a detainee within its custody at its Eden Detention Center, a duty of due care to prevent foreseeable harms. Specifically, CoreCivic had actual knowledge of (or reasonably should have known of) the risk of harm, injury or death to detainees like Decedent posed by falling from a bunk, given Decedent's known history of hemophilia,

seizures, injury-causing falls, and difficulty in safely accessing his bunk.  Indeed, Decedent had suffered a similar injury in a similar incident just four days before his Second Head Injury.

6.3     Additionally, as the owner and operator of the Eden Detention Center where Decedent was detained, CoreCivic had actual knowledge of (or reasonably should have known of) the risk of harm, injury or death to detainees like Decedent, resulting from CoreCivic's failure to timely and properly treat Decedent's injuries inflicted during such Second Head Injury – including its failure to promptly transfer him to a suitable medical care facility – given CoreCivic's prior knowledge of Decedent's specialized treatment needs as a hemophiliac.  Nonetheless, despite such knowledge, CoreCivic failed to protect Decedent from such unreasonable risk of physical harm.

6.4     CoreCivic was reckless when it failed to properly hire, train, monitor and/or supervise its agents or employees who staffed its Eden Detention Center at the time of Decedent's Second Head Injury, regarding the policies and procedures necessary to 1) protect detainees such as Decedent from the unreasonable risk of physical harm posed by falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk); and 2) ensure the prompt and adequate diagnosis and treatment of injured hemophiliac detainees, including their timely transfer to suitable medical care facilities.

6.5     As a proximate result of the CoreCivic's actions and inactions, previously described, Decedent died.

6.6     At the time of his death, Decedent was 53 years of age.  He was in good health, with a reasonable life expectancy of at least 25 additional years.  In all probability, Decedent would have continued caring for and supporting his four children, i.e. the Statutory Beneficiaries, until his death.

6.7    The Statutory Beneficiaries have suffered pecuniary loss from the death of their father, Decedent, including losses of care, maintenance, support, services, advice, counsel and contributions of a pecuniary value that the Statutory Beneficiaries would, in reasonable probability, have received from Decedent during his lifetime had he lived.  The Statutory Beneficiaries have also lost the inheritance that Decedent, in all reasonable probability, would have left to them by will or inheritance.  The Statutory Beneficiaries have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness.  The various Statutory Beneficiaries have suffered severe mental depression and anguish, grief and sorrow as a result of the death of their father, Decedent, and are likely to continue to suffer for a long time in the future. For all these losses, Plaintiff seeks wrongful death damages exceeding $75,000.

## VI. SURVIVAL ACTION

7.1    Plaintiff re-alleges and incorporates herein by reference, as though set forth in their entirety, the allegations contained in the preceding paragraphs.

7.2    As a direct and proximate result of the negligent actions of CoreCivic in connection with Decedent's Second Head Injury, and CoreCivic's subsequent failure to properly diagnose and treat his injuries, Decedent was killed.  Specifically, in the 6 days between his Second Head Injury and his eventual death, Decedent endured significant pain and suffering, as a result of both the injuries originally resulting from the negligence of CoreCivic personnel, and their subsequent inadequate treatment of those injuries.  CoreCivic's own records show that Decedent was "ambulatory and conscious" in the wake of the Second Head Injury.

7.3    As a result of the Second Head Injury made the basis of this lawsuit, Decedent's Estate incurred the following damages:

    i)      The conscious pain and suffering incurred by Decedent as a result of the Second Head Injury; and

    ii)     Funeral and burial expenses.

7.4    By reason of all of the above, Decedent's Estate has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

## VIII. <u>RESPONDEAT SUPERIOR</u>

8.1    Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.

8.2    Both prior to Decedent's Second Head Injury and immediately thereafter, those individuals staffing the Eden Detention Center who i) failed to protect detainee Decedent from the unreasonable risk of physical harm posed by falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk), and/or who ii) thereafter failed to timely and properly diagnose and treat Decedent's injuries inflicted during such Second Head Injury, were the agents, servants, and employees of CoreCivic, and were acting within the course and scope of their employment for CoreCivic in so doing.

8.3    At the time of Decedent's Second Head Injury and immediately thereafter, all such individuals staffing the Eden Detention Center were engaged in the furtherance of the business affairs and/or common business enterprise of their employer CoreCivic and were likewise engaged in accomplishing work tasks for CoreCivic's benefit.

8.4    Accordingly, under such theory of vicarious liability, Plaintiff invokes the doctrine of ***respondeat superior*** against CoreCivic.

## IX. <u>GROSS NEGLIGENCE</u>

9.1     Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.

9.2     The actions of CoreCivic described herein occurred as a result of the type of conscious indifference and reckless disregard toward the safety of others as to allow for the award of exemplary or punitive damages under Texas law.  Such conduct, as described more fully herein constitutes gross negligence.  As a result, Plaintiff hereby seeks exemplary damages pursuant to VTCA Civ. Prac. & Rem. Code §41.003, in an amount that may be found by the jury.

9.3     The acts and omissions of Defendant CoreCivic described herein – when viewed from the standpoint of such Defendant at the time of the act or omission – involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Decedent, a hemophiliac whom CoreCivic had placed under a monitoring program after his First Head Injury just four days before.  This is especially so given that, as an involuntary detainee in Eden Detention Center, Decedent was entirely dependent on CoreCivic in 1) seeking to safeguard himself from the risk of falling off of his bunk, and 2) obtaining adequate medical care for his Second Head Injury which occurred while in CoreCivic's custody.

9.4     Accordingly, Defendant CoreCivic exhibited a conscious indifference to the rights, safety, or welfare of Decedent by failing to properly hire, train, monitor and/or supervise its agents or employees who staffed its Eden Detention Center at the time of his Second Head Injury, regarding the policies and procedures necessary to 1) protect detainees such as Decedent from the unreasonable risk of physical harm posed by falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk),

and 2) ensure the prompt diagnosis and treatment of injured hemophiliac detainees, including their timely transfer to suitable medical care facilities.  Accordingly, CoreCivic knew or should have known that its dangerous and reckless manner of hiring, training, monitoring and/or supervising its agents or employees who staffed its Eden Detention Center would cause injuries and death. Such behavior has resulted in Decedent's suffering and eventual death.

9.5    CoreCivic had actual, subjective awareness of the risks involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of detainees such as Decedent.  On the facts stated herein, Plaintiff hereby requests that exemplary damages be awarded against CoreCivic.

## X. DAMAGES

10.1    Plaintiff incorporates by reference all paragraphs set forth above, as if fully set forth here.

10.2    As a direct, producing and proximate cause of the CoreCivic's actions, Decedent and/or the Statutory Beneficiaries suffered the following injuries and damages;

10.3    As a result of the act and omissions of CoreCivic, Decedent suffered harms including but not limited to humiliation, pain, physical injuries, loss of liberty, severe fear, anxiety, and the loss of his life, the value of which is to be determined according to proof.

10.4    As a result of the acts and omissions of CoreCivic, the Statutory Beneficiaries suffered the loss of their parent-child relationship with Decedent, including loss of care, comfort, solace, protection, services, and/or parental love; loss of companionship and society sustained in the past and future; loss of inheritance, mental anguish in the past and future, as well as the support of Decedent and loss of inheritance, the value of which is to be determined according to proof.

11

10.5    As a result of the acts and omissions of CoreCivic, the Statutory Beneficiaries suffered and incurred expenses for the funeral and burial of the Decedent, the value of which is to be determined according to proof.

## XI. **JURY DEMAND**

11.    Plaintiff hereby demands a trial by jury.

## XII. **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Michael Anthony Olague, Dependent Administrator of the Estate of Arturo Martinez Olague, Deceased, requests that Defendant CoreCivic, Inc. be cited to appear and answer, and that on final trial the Plaintiff be awarded judgment:

a)  For compensatory damages according to proof;

b)  For punitive damages according to proof;

c)  For an award of interest, including prejudgment interest at the legal rate according to proof;

d)  For costs of suit incurred here on all causes of action; and

e)  For such other and further relief as the court may deem proper.

Dated: 21st of December, 2022.

Respectfully submitted,

GUERRA LAW FIRM
320 W. Pecan Avenue
McAllen, Texas 78501
Tel. (956) 618-2557
Fax. (956) 618-1690

By:    **/s/ MANUEL GUERRA, III**
       MANUEL GUERRA, III
       Texas Bar No. 00798226
       Attorney for Plaintiff