IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY OLAGUE, AS | § | |
| DEPENDENT ADMINISTRATOR | § | |
| OF THE ESTATE OF ARTURO | § | |
| MARTINEZ OLAGUE, Deceased | § | |
| *Plaintiff* | § | CIVIL ACTION NO. 6:22-CV-00070-H |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CORECIVIC, INC. | § | |
| *Defendant* | § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Michael Anthony Olague, duly appointed, qualified and acting as the Dependent Administrator of the Estate of Arturo Martinez Olague, deceased, complaining of Defendant CoreCivic, Inc., and in support thereof would show the Court as follows:

## I.     INTRODUCTION

1.1     Arturo Martinez Olague ("Decedent") was a detainee at the Eden Detention Center, a private prison located in Eden, Texas.  Defendant CoreCivic, Inc. ("CoreCivic") owns and operates Eden Detention Center as a medium-security facility holding male detainees arrested by the federal Immigration and Customs Enforcement agency, pursuant to CoreCivic's contract with the Federal Bureau Of Prisons.

1.2     CoreCivic is a sprawling giant in the field of private corrections facilities, overseeing more than a hundred facilities nationwide, with over 14,000 employees overseeing 90,000 detainees, and annual revenues approaching 2 billion dollars.     See https://en.wikipedia.org/wiki/CoreCivic.  In choosing to locate its Detention Center in Concho

1

County, Texas, CoreCivic knew or should have known that, in the event of serious injury, it would be unable to promptly transport its hemophiliac detainees to an appropriate healthcare facility, given the absence of such facilities within 150 miles of Concho County.

1.3     In January of 2021, Decedent received a series of severe injuries while in the custody of CoreCivic, including two or more unrestrained falls off of his bunk, as well as in a violent altercation with CoreCivic detention officers.   Despite its clearcut duty to protect hemophiliac detainees such as Decedent from the "unreasonable risk of physical harm", CoreCivic failed to take any effective steps to preemptively protect against such fall- and altercation-related injuries, despite Decedent's known history of hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk, including a highly similar injury just four days before Decedent's final fall.   Likewise, despite its duty to appropriately diagnose and/or treat injured hemophiliac detainees such as Decedent, CoreCivic failed to do so here, as most notably demonstrated in the 8 hour delay between Decedent's final, injurious fall, and his belated arrival at a medical facility able to appropriately care for hemophiliacs.

1.4     Just six days after his final fall, Decedent died of the severe injuries incurred by him while in CoreCivic's custody at the Eden Detention Center.   Plaintiff, as the Dependent Administrator of Decedent's estate, now brings the present wrongful death and survival claims against CoreCivic.

## II.     JURISDICTION AND VENUE

2.1     Jurisdiction is proper under 28 USC §1332(a)(1) as Plaintiff is a Texas resident, while Defendant CoreCivic is a Maryland corporation, and the amount in controversy exceeds $75,000.

2.2    Venue is proper in this District under 28 USC §1391(b), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

### III.    PARTIES

3.1    On or about December 20, 2022, Plaintiff was issued Letters Of Dependent Administration for the Estate of Arturo Martinez Olague, Deceased, by the Probate Court of Texas, County of Hidalgo.  Plaintiff is therefore the personal representative of Decedent's Estate, and as such is entitled to bring suit for damages owed Decedent pursuant to VTCA Estates Code §351.04(a)(1).

3.2    The statutory beneficiaries of Decedent are entitled to bring an action on account of the wrongful death of Decedent, but they have not commenced any such action within three months of Decedent's death, nor have they requested that Plaintiff not commence this Lawsuit. Therefore, Plaintiff brings this action pursuant to §71.004 of Civil Practice & Remedies Code of Texas, on behalf of the following statutory beneficiaries:

In his individual capacity, Michael Anthony Olague is a United States citizen and a resident of McAllen, Texas.  He is a biological child of Decedent.

Jacqueline Olague is a United States citizen and a resident of McAllen, Texas.  She is a biological child of Decedent.

Stephanie Torres is a United States citizen and a resident of McAllen, Texas.  She is a biological child of Decedent.

Arthur Olague is a United States citizen and a resident of McAllen, Texas.  He is a biological child of Decedent.

3.3    All four of Decedent's children listed above will be collectively referred to herein as the "Statutory Beneficiaries".  See Attached Exhibit A – Letter of Dependent Administration naming Michael Anthony Olague as Dependent Administrator of the Estate of Arturo Martinez Olague.

**Defendant**

3.4     Defendant CoreCivic, Inc., formerly the Corrections Corporation of America, is a for-profit corporation providing correctional and detention services.  CoreCivic is a Maryland corporation operating under federal tax laws as a real estate investment trust.  CoreCivic does business in this District, including its operation of the Eden Detention Center, located in Eden, Texas.  According to the Texas Secretary of State, CoreCivic's registered agent is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  Regardless of its place of incorporation, the allegations against CoreCivic primarily arise from its actions and omissions occurring within both the State of Texas and this District.

### IV.     FACTUAL ALLEGATIONS

4.1     CoreCivic owns and operates the Eden Detention Center, a private prison located in Eden, Texas.  Pursuant to its contract with the Federal Bureau Of Prisons, CoreCivic operates Eden Detention Center as a medium-security facility holding male detainees arrested by the federal Immigration and Customs Enforcement agency.  Eden Detention Center is located in Concho County, Texas, population 2,766, which County lacks any healthcare facilities able to provide care to severely injured hemophiliac patients.  The nearest regional healthcare facility is the Shannon Medical Center in San Angelo, Texas, a 43 minute drive from the Eden Detention Center; it too lacks the ability to provide care to severely injured hemophiliac patients.

4.2     Decedent Arturo Martinez Olague was first arrested on November 7, 2019, and was initially detained in various other detention and/or processing centers located in Texas.  In November of 2020, the United States District Court for the Southern District of Texas sentenced Decedent to 18 months imprisonment for "being found in the U.S. after previous deportation", pursuant to 8 USC §1326.  The sentencing court transferred Decedent to the custody of the Federal Bureau Of Prisons, which initially detained Decedent at various other detention and/or processing

4

centers located in Texas.  On or about December 2, 2020 Decedent was transferred to the Eden Detention Center, pursuant to the Federal Bureau Of Prisons' existing arrangement with CoreCivic.

4.3     As part of its intake process, CoreCivic received Decedent's recent medical records from the aforementioned prior detention and processing centers, which records repeatedly indicated that Decedent suffered from hemophilia, a genetic disorder which prevents blood from clotting normally, and which can significantly heighten the health risks arising from otherwise minor injuries, such as a fall off of a low bunk, or a physical altercation, to a potentially fatal degree.  Such prior medical records likewise indicated that Decedent was prone to seizures, had last been hospitalized for such seizures in July 2020, and had also broken 3 ribs in a seizure-related fall.  Unsurprisingly, Decedent's prior medical records likewise recommended that Decedent be assigned to a bottom bunk only, to reduce the medical risks of injuring himself while falling out of bed.

4.4     At the time of his intake at the Eden Detention Center in December 2020, CoreCivic's personnel (including Tracy Penn, P.A.) performed a health evaluation wherein Decedent's hemophilia and prior history of seizures and falls were acknowledged.  In handwritten remarks on Decedent's intake forms, CoreCivic's personnel (specifically, Diana Alfaro, LVN) explicitly recommended "*low bunk, low tier*".  All such CoreCivic employees identified in this Statement Of Facts are collectively referred to herein as "EDC Facility Employees").

4.5     Prior to any further falls occurring in the Eden Detention Center itself, Decedent repeatedly reported to CoreCivic personnel (including EDC Facility Employee Pam Schwertner, R.N.) – in January of 2021 – that he was feeling dizzy, and had a recent history of falls.

Contemporaneous records kept by CoreCivic personnel (including Pam Schwertner, R.N.) likewise repeatedly record that Decedent was "unsteady" and "off balance".

4.6     On January 23, 2021, Decedent was involved in a physical altercation with CoreCivic Detention Officer Spurgin ("Altercation"), in which Officer Spurgin, an EDC Facility Employee, violently threw Decedent against a metal bunk, and wrestled him into submission, while repeatedly exerting force on Decedent's head ("First Head Injury").  Upon information and belief, because of Decedent's known status as a hemophiliac, the amount of force and methods of restraint used in the Altercation were inappropriate.

4.7     On January 24, 2021, CoreCivic personnel observed Decedent lying on the floor after a fall, and attempting to climb back into his bunk.  In so doing, Decedent struck his head on the bunk, and suffered a severe head injury which resulted in a concussion ("Second Head Injury"). Decedent was transferred to Shannon Medical Center for emergency care.  CoreCivic's Sandra Morvan, an EDC Facility Employee, later applied to the federal Department Of Justice for approval of the costs incurred in treating Decedent's Second Head Injury.  Upon information and belief, CoreCivic faced potential financial liability for healthcare furnished to detainees such as Decedent.

4.8     In the wake of Decedent's Second Head Injury, CoreCivic failed to preemptively transfer Decedent to an alternate facility located nearer to an appropriate healthcare facility, in the event that such another, similar injury should occur.  Instead, unknown CoreCivic employees supposedly implemented a program to monitor Decedent, as noted by CoreCivic's Elizabeth Cunningham, R.N., an EDC Facility Employee.  However, despite Decedent's known history of hemophilia, seizures, injury-causing falls, and difficulty in safely accessing his bunk, no proactive steps (such as rails, padding, or allowing Decedent to sleep on the floor) were taken to reduce the

6

risk of Decedent falling from his bunk a second time.  Accordingly, any such CoreCivic monitoring program was negligently conceived and/or executed, as demonstrated by the near-identicality of Decedent's Final Head Injury, occurring just 4 days after such monitoring program was supposedly instituted.

4.9    In a written Sick Call Request dated January 26, 2021, Decedent notified CoreCivic that "*I have fallen twice inside this cell.  Both officers have IGNORE me.  I want to see Unit Dr. I need medical help.*"  Despite Decedent's long history of injurious falls, and explicit request to be seen by a physician, CoreCivic merely had a nurse (EDC Facility Employee Nicola Omeally-Andries, R.N.) assess his condition, on January 27, 2021.  Upon information and belief, such care-decision was made by a corporate vice-principal of CoreCivic.

4.10    On January 28, 2021, Decedent suffered a third and final head injury when he fell from his bunk on to the concrete floor of his cell, a distance variously reported as being from 18 to 36 inches ("Final Head Injury").  Decedent was initially conscious for a considerable amount of time after receiving his Final Head Injury, during which time Decedent complained of a headache, and attempted to get up from his bunk.   Although CoreCivic personnel (EDC Facility Employees Ronnie Cook and Kenneth Rediger) discovered Decedent's injuries at approximately 12:37 a.m., CoreCivic (including EDC Facility Employee Nurse Practitioner Osa) failed to ensure that Decedent was delivered to an appropriate healthcare facility, in an appropriate manner.

4.11    Specifically, CoreCivic (including Nurse Practitioner Osa) first directed that Decedent be transferred i) by ground ambulance ii) to the Shannon Medical Center in San Angelo, Texas.  As a result, Decedent did not arrive there until 2:06 am, almost an hour and a half after CoreCivic first became aware of Decedent's Final Head Injury.  However, because Shannon Medical Center lacked the proper facilities to treat injured hemophiliacs (including appropriate lab

tests, hematology expertise, and adequate supplies of factor IX, an artificial coagulant), Shannon Medical Center transferred Decedent – by air ambulance – to an appropriately equipped facility, i.e. St. David's South Austin Medical Center, in Austin, Texas, 200 miles away.  However, St. David's did not assume control of Decedent's care until 8:31 a.m., nearly eight hours after CoreCivic first discovered his Final Head Injury.

4.12    Such an unacceptable 8 hour delay-in-treatment arose from the fact that, despite Decedent's known hemophilia and long prior history of fall-related injuries, CoreCivic 1) knowingly and unilaterally chose to detain Decedent, a hemophiliac, in its Eden Detention Center facility, despite the Center's lack of proximity to medical facilities able to supply appropriate care; 2) chose to send Decedent to Shannon Medical Center after his Final Head Injury, despite the fact that CoreCivic knew or should have known that such facility was unable to adequately care for injured hemophiliacs; and 3) chose to transport Decedent to Shannon Medical Center via ground ambulance, leading to an almost hour and a half delay between CoreCivic's discovery of Decedent's Final Head Injury, and his arrival at even an <u>inappropriate</u> healthcare facility.

4.13    Despite CoreCivic's knowledge of Decedent's i) hemophilia, ii) First, Second and Final Head Injuries and iii) resultant need to be transferred to an appropriate healthcare facility with an ample supply of factor IX, CoreCivic took no steps to assure that Decedent was directly and promptly transported to such a facility.    Upon information and belief, because of the significant financial costs involved in transporting and treating injured hemophiliac detainees (such as Decedent) at far-off healthcare facilities, responsibility for such care-decisions was shared with upper-level CoreCivic vice principals, rather than those lower-level CoreCivic personnel who were on duty at Eden Detention Center, at 12:35 am.

8

4.14    Decedent died on February 2, 2021.  The Travis County Medical Examiner listed "blunt head trauma" as the sole cause of Decedent's death.  Upon information and belief, Decedent's death was proximately caused by CoreCivic's failure to 1) preemptively protect hemophiliac detainees such as Detainee from injury, including head injuries, and 2) once inflicted, to properly treat such head injuries, including but not limited to promptly and directly transferring injured hemophiliacs such as Decedent to an appropriate healthcare facility.

## V.    CAUSES OF ACTION

5.1    In *Minneci v. Pollard*, 565 US 118, 126-130 (2012), the Supreme Court recognized that federal detainees being held in private prisons possessed the right to sue such prisons and their staff under state law, citing *Salazar v. Collins*, 255 SW3d 191, 198-200 (Tex. App. – Waco 2008, no pet.).  The *Minneci* court, *ibid*, further held that such actionable torts included failure to protect detainees from the "unreasonable risk of physical harm", and "negligent failure to diagnose or treat".

## NEGLIGENCE

5.2    Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.  As set forth in greater detail below, Plaintiff alleges the following theories of negligence-based liability against CoreCivic:

5.3    CoreCivic is directly liable to Plaintiff by reason of its failure to properly hire, train, monitor and/or supervise its agents or employees who staffed its Eden Detention Center, including the above-identified EDC Facility Employees.

5.4    CoreCivic is directly liable to Plaintiff by reason of its failure to properly adopt, implement, and/or enforce proper policies and procedures regarding both preemptively safeguarding and adequately treating injured hemophiliac detainees, including Decedent.

5.5     CoreCivic is vicariously liable to Plaintiff under the theory of respondeat superior, by reason of the actions or omissions of those agents, servants, and employees of CoreCivic (including the above-identified EDC Facility Employees) who,  while acting within the course and scope of their employment for CoreCivic, contributed to Decedent's death.

5.6     Specifically, CoreCivic, as a for-profit private prison, owed its detainees such as Decedent a duty to protect him from the "unreasonable risk of physical harm", and to "diagnose or treat" Decedent in a non-negligent manner.  Plaintiff here alleges that CoreCivic breached its first duty by failing to preemptively protect Decedent, a hemophiliac detainee, from foreseeable injury, by failing to take steps to adequately prevent Plaintiff's First, Second and Final Head Injuries.  Plaintiff further alleges that CoreCivic breached its second duty to properly "diagnose or treat" Decedent's head injuries, once inflicted, including but not limited to promptly and directly transferring Decedent (as a hemophiliac) to an appropriate healthcare facility.

**WRONGFUL DEATH**

5.7     Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.

5.8     CoreCivic owed Decedent, as a detainee within its custody at its Eden Detention Center, a duty of due care to prevent foreseeable harms. Specifically, CoreCivic had actual knowledge of (or reasonably should have known of) the risk of harm, injury or death to detainees like Decedent posed by falling from a bunk, given Decedent's known history of hemophilia, seizures, injury-causing falls, difficulty in safely accessing his bunk, as well as his First Head Injury received in the recent Altercation.  Likewise, CoreCivic was aware that Decedent had suffered a Second Head Injury – in a similar bunk-related incident just four days before his Final Head Injury – but failed to take preventative measures sufficient to prevent such a reoccurrence.

10

5.9     Additionally, as the owner and operator of the Eden Detention Center where Decedent was detained, CoreCivic had actual knowledge of (or reasonably should have known of) the risk of harm, injury or death to detainees like Decedent, resulting from CoreCivic's failure to properly address Decedent's injuries inflicted during such First through Final Head Injuries – including its failure to promptly and directly transfer him to an appropriate medical care facility (i.e. one possessing an adequate supply of the artificial coagulant, factor IX).  This is because CoreCivic had prior knowledge of Decedent's specialized treatment needs as a hemophiliac, and his extensive prior history of accidents.  Nonetheless, despite such knowledge, CoreCivic failed to protect Decedent from such unreasonable risk of physical harm, by sending him to an inappropriate healthcare facility.

5.10    CoreCivic was reckless when it failed to properly hire, train, monitor and/or supervise its agents or employees (including the above-identified EDC Facility Employees) who staffed its Eden Detention Center at the time of Decedent's detention there, regarding the policies and procedures necessary to 1) protect detainees such as Decedent from the unreasonable risk of physical harm posed by detainee/guard altercations and/or falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, difficulty in safely accessing his bunk, and recent Altercation); and 2) ensure the prompt and adequate treatment of injured hemophiliac detainees, including their timely transfer to appropriate medical care facilities.

5.11    CoreCivic was likewise reckless when it failed to properly adopt, implement, and/or enforce the policies and procedures necessary to 1) protect detainees such as Decedent from the unreasonable risk of physical harm posed by detainee/guard altercations and/or falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, difficulty in safely accessing his bunk, and recent Altercation); and 2) ensure the prompt and adequate

treatment of injured hemophiliac detainees, including their timely transfer to appropriate medical care facilities.

5.12    As a proximate result of the CoreCivic's actions and inactions, previously described, Decedent died.

5.13    At the time of his death, Decedent was 53 years of age.  He was in good health, with a reasonable life expectancy of at least 25 additional years.  In all probability, Decedent would have continued caring for and supporting his four children, i.e. the Statutory Beneficiaries, until his death.

5.14    The Statutory Beneficiaries have suffered pecuniary loss from the death of their father, Decedent, including losses of care, maintenance, support, services, advice, counsel and contributions of a pecuniary value that the Statutory Beneficiaries would, in reasonable probability, have received from Decedent during his lifetime had he lived.  The Statutory Beneficiaries have also lost the inheritance that Decedent, in all reasonable probability, would have left to them by will or inheritance.  The Statutory Beneficiaries have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness.  The various Statutory Beneficiaries have suffered severe mental depression and anguish, grief and sorrow as a result of the death of their father, Decedent, and are likely to continue to suffer for a long time in the future. For all these losses, Plaintiff seeks wrongful death damages exceeding $75,000.

## SURVIVAL ACTION

5.15    Plaintiff re-alleges and incorporates herein by reference, as though set forth in their entirety, the allegations contained in the preceding paragraphs.

5.16    As a direct and proximate result of the aforementioned negligent actions of

CoreCivic in connection with Decedent's First through Final Head Injuries, and CoreCivic's subsequent failure to properly diagnose and treat his injuries, Decedent died. Specifically, in the 10 days between his First Head Injury and his eventual death, Decedent endured significant pain and suffering, as a result of both the injuries originally resulting from the negligence of CoreCivic (and/or its agents, servants, and employees, including the above-identified EDC Facility Employees), and their subsequent inadequate treatment of those injuries. In particular, CoreCivic's own records show that Decedent was "ambulatory and conscious" in the wake of the Final Head Injury.

5.17    As a result of the First through Final Head Injuries made the basis of this Lawsuit, Decedent's Estate incurred the following damages:

i)      The conscious pain and suffering incurred by Decedent as a result of the First through Final Head Injuries; and

ii)     Funeral and burial expenses.

By reason of all of the above, Decedent's Estate has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

## **RESPONDEAT SUPERIOR**

5.18    Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.

5.19    Both prior to Decedent's First through Final Head Injuries, and immediately thereafter, those individuals staffing or overseeing the Eden Detention Center (including the above-identified EDC Facility Employees) who i) failed to protect detainee Decedent from the unreasonable risk of physical harm posed by detainee/guard altercations and/or falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, difficulty in

safely accessing his bunk, and recent Altercation), and/or who ii) thereafter failed to timely and properly diagnose and treat Decedent's injuries inflicted during such First through Final Head Injuries, and/or who iii) failed to properly adopt, implement, and/or enforce proper policies and procedures regarding both preemptively safeguarding and adequately treating Decedent, as an injured hemophiliac detainee, were the agents, servants, and employees of CoreCivic, and were acting within the course and scope of their employment for CoreCivic in so doing.

5.20     At the time of Decedent's First through Final Head Injuries and immediately thereafter, all such individuals staffing or overseeing the Eden Detention Center were engaged in the furtherance of the business affairs and/or common business enterprise of their employer CoreCivic, and were likewise engaged in accomplishing work tasks for CoreCivic's benefit.

5.21     Accordingly, under such theory of vicarious liability, Plaintiff invokes the doctrine of *respondeat superior* against CoreCivic.

**GROSS NEGLIGENCE**

5.22     Plaintiff incorporates by reference all paragraphs above as if they were fully set forth herein.

5.23     The actions of CoreCivic (through its vice principals and/or its agents, servants, and employees, including the above-identified EDC Facility Employees) described herein occurred as a result of the type of conscious indifference and reckless disregard toward the safety of others as to allow for the award of exemplary or punitive damages under Texas law. Such conduct, as described more fully herein constitutes gross negligence. As a result, Plaintiff hereby seeks exemplary damages pursuant to VTCA Civ. Prac. & Rem. Code §41.003, in an amount that may be found by the jury.

5.24   The acts and omissions of Defendant CoreCivic (through its vice principals and/or its agents, servants, and employees, including the above-identified EDC Facility Employees) described herein – when viewed from the standpoint of such Defendant at the time of the act or omission – involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Decedent, a hemophiliac whom CoreCivic (and/or its agents, servants, and employees) had purportedly placed under a monitoring program after his Second Head Injury, just four days before his final such injury.  This is especially so given that, as an involuntary detainee in Eden Detention Center, Decedent was entirely dependent on CoreCivic (and/or its agents, servants, and employees, including the above-identified EDC Facility Employees) in 1) seeking to safeguard himself from the risk of falling off of his bunk, and 2) obtaining adequate medical care for his First through Final  Head Injuries which occurred while in CoreCivic's custody.

5.25   Accordingly, Defendant CoreCivic (through its vice principals and/or its agents, servants, and employees including the above-identified EDC Facility Employees) exhibited a conscious indifference to the rights, safety, or welfare of Decedent by failing to both properly adopt, implement, and/or enforce proper policies and procedures, as well as to properly hire, train, monitor and/or supervise its agents or employees who staffed its Eden Detention Center, regarding 1) protecting detainees such as Decedent from the unreasonable risk of physical harm posed by detainee/guard altercations and/or falling from his bunk (given Decedent's known history of hemophilia, seizures, injury-causing falls, difficulty in safely accessing his bunk, and recent Altercation), and 2) ensuring the prompt diagnosis and treatment of injured hemophiliac detainees, including their timely and direct transfer to appropriate medical care facilities.  Accordingly, CoreCivic (through its vice principals and/or its agents, servants, and employees, including the above-identified EDC Facility Employees) knew or should have known that their dangerous and

15

reckless manner of 1) adopting, implementing, and/or enforcing proper hemophilia-related policies and procedures, and/or 2) hiring, training, monitoring and/or supervising its agents or employees who staffed or oversaw hemophiliacs (such as Decedent) at its Eden Detention Center would cause injuries and death.  Such behavior has proximately resulted in Decedent's suffering and eventual death.

5.26    CoreCivic (through its vice principals and/or its agents, servants, and employees, including the above-identified EDC Facility Employees) had actual, subjective awareness of the risks involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of hemophiliac detainees such as Decedent.  On the facts stated herein, Plaintiff hereby requests that exemplary damages be awarded against CoreCivic.

## VI.    DAMAGES

6.1    Plaintiff incorporates by reference all paragraphs set forth above, as if fully set forth here.

6.2    As a direct, producing and proximate result of the actions and omissions of CoreCivic, Decedent and/or the Statutory Beneficiaries suffered the following injuries and damages:

6.3    As a result of the act and omissions of CoreCivic (through its vice principals and/or its agents, servants, and employees, including the above-identified EDC Facility Employees), Decedent suffered harms including but not limited to humiliation, pain, physical injuries, loss of liberty, severe fear, anxiety, and the loss of his life, the value of which is to be determined according to proof.

6.4　As a result of the acts and omissions of CoreCivic (through its vice principals and/or its agents, servants, and employees, including the above-identified EDC Facility Employees), the Statutory Beneficiaries suffered the loss of their parent-child relationship with Decedent, including loss of care, comfort, solace, protection, services, and/or parental love; loss of companionship and society sustained in the past and future; loss of inheritance, mental anguish in the past and future, as well as the support of Decedent and loss of inheritance, the value of which is to be determined according to proof.

6.5　As a result of the acts and omissions of CoreCivic (through its vice principals and/or its agents, servants, and employees), the Statutory Beneficiaries suffered and incurred expenses for the funeral and burial of the Decedent, the value of which is to be determined according to proof.

## VII.　JURY DEMAND

7.1　Plaintiff hereby demands a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Michael Anthony Olague, Dependent Administrator of the Estate of Arturo Martinez Olague, Deceased, requests that Defendant CoreCivic, Inc. be cited to appear and answer, and that on final trial the Plaintiff be awarded judgment:

a) For compensatory damages according to proof;

b) For punitive damages according to proof;

c) For an award of interest, including prejudgment interest at the legal rate according to proof;

d) For costs of suit incurred here on all causes of action; and

e) For such other and further relief as the court may deem proper.

17

Respectfully submitted,

GUERRA LAW FIRM
320 W. Pecan Avenue
McAllen, Texas 78501
Tel. (956) 618-2557
Fax. (956) 618-1690


By:     **/s/ MANUEL GUERRA, III**
        MANUEL GUERRA, III
        Texas Bar No. 00798226
        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I electronically transmitted the attached Plaintiff's First Amended Petition to the Clerk's Office using the CM/ECF System to the following counsel of record:

Daniel P. Struck
Kristina R. Rood
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Via ECF eService: struck@strucklove.com
krood@strucklove.com

And

Larry W. Bale, TX Bar No. 01629830
HAY, WITTENBURG, DAVIS, CALDWELL
& BALE, L.L.P.
One East Twohig, Third Floor
P. O. Box 271
San Angelo, Texas 76902-0271
Via ECF eService: lwb@hwdcb.com

*Attorneys for Defendant CoreCivic, Inc.*


                        */s/ Manuel Guerra, III*
                        *MANUEL GUERRA, III*